THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH DEMMA, Defendant-Appellant.

First District (4th Division)    No. 79-645

Opinion filed December 31, 1980.

James J. Doherty, Public Defender, of Chicago (Sam Majerowicz, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Defendant, Joseph Demma, appeals from a finding that he had violated the conditions of several probation sentences. As the result of that finding his probations were revoked and he received concurrent sentences of five years, seven years, and five years for the underlying crimes of felony theft, burglary, and felony theft respectively. On appeal defendant makes the following contentions: (1) the State failed to prove by a preponderance of the evidence that defendant violated the conditions of his probations; (2) the trial court erred in revoking defendant's probations and imposed excessive sentences; (3) the trial court erroneously allowed defendant to waive his right to a presentence investigation report; (4) as to two of defendant's sentences, imposed for acts committed in 1973 and 1974, the trial court improperly denied mandated credit for time defendant had spent on probation; (5) as to the sentence imposed for acts occurring in 1977, the trial court abused its discretion in denying defendant credit for time previously spent on probation.

We affirm the trial court, finding that defendant violated the terms of his probations but remand for a new sentencing hearing.

On December 20, 1974, defendant appeared before Judge Fitzgerald and pleaded guilty to felony theft and burglary.[1] It was stipulated that the theft occurred in October 1973 and the burglary occurred in February 1974. Following an introduction of the presentence investigation report and a hearing in aggravation and mitigation defendant was sentenced to five years' probation. One of the conditions of probation was that defendant continue his participation in the Gateway House drug rehabilitation program until discharged by the program director.

On May 26, 1978, before Judge Schreier defendant pleaded guilty to felony theft, possession of burglary tools, and violation of Judge Fitzgerald's probation order. Having waived his right to a presentence investigation report, defendant was sentenced to two years' probation for the theft and possession charges. For the violation of Judge Fitzgerald's probation that five-year period of probation was extended for two years, although it was also specified that this term was to be concurrent with the two years' probation imposed on the substantive offenses to which defendant had pleaded guilty that day. A condition of these two probations was that defendant enter and complete the Gateway House drug program.

On July 24, 1978, in a petition for violation of probation, defendant was charged with having failed to report to his probation officer and with having failed to enter the Gateway program. The hearing on these charges was held before Judge Schreier on December 14, 1978. We summarize the pertinent testimony adduced at that hearing.

Denise Weeks, a Cook County probation officer, testified that on May 26, 1978, she was assigned to Judge Schreier's courtroom, and was present when defendant was sentenced. One of the conditions of probation entered that day was that defendant "join the Gateway residential drug program through TASC" (an acronym for Treatment Alternative to Street Crime). Defendant signed a "spec. sheet" in which he agreed to the conditions of probation including a provision stating that he was to attend the residential drug program through TASC. Weeks gave defendant a copy of this document. She also prepared a probation history sheet which defendant signed and which stated that a condition imposed by the court was that defendant was "[t]o attend residential drug program. GATEWAY HOUSE TASC." Weeks explained to defendant that leaving the program at any time would be a violation of probation, a fact which

---

[1] At this hearing defendant also pleaded guilty to another charge of felony theft and apparently the probation order applied to that conviction as well. However, the parties have not cited that conviction on appeal.

defendant said he understood. In the early part of June or as early as May 31 defendant appeared at Weeks' office. She asked why he was there when he was supposed to be in Gateway. Defendant told her he had received permission to visit friends and was accompanied by an individual from Gateway. In August defendant telephoned Weeks to tell her he had broken his leg and was in the hospital. On September 11, 1978, he admitted to her that he had left the Gateway program but said he was trying to enroll in another drug program.

Joseph Gioia, supervisor of a TASC unit responsible for placement, testified that on May 31, 1978, he spoke to the defendant, reminding him that a condition of probation was that he enter and successfully complete the Gateway program. He informed defendant that he would be going to the Lake Villa facility, a live-in program. He also warned defendant that leaving the program against medical or staff advice would constitute a "probable violation of probation" and he instructed defendant not to leave the facility without staff approval. According to Gioia at this juncture defendant had been accepted into the program and was scheduled for an orientation interview at Lake Villa.

The next morning Gioia found defendant at his office. Defendant explained that he left the facility because he "couldn't hack it." Gioia spoke to defendant for about 40 minutes, warning him of the probability of being reincarcerated. Defendant responded that he would have to think the matter over. On June 4 defendant telephoned Gioia and asked him for help in relocating to another facility. Gioia advised him that this would have to be done by the facility he had left. He also advised defendant to get back into the facility or to report to "probation" immediately. On June 5 defendant was officially terminated as a participant in the TASC program.

The final State witness was Eduardo Rodriquez, who worked as a court liaison for TASC. On May 26 he interviewed defendant in connection with the charges for which Judge Schreier ultimately placed defendant on probation. At that time defendant signed an agreement to participate in treatment with TASC. This document, introduced into evidence at the hearing, states, *inter alia,* that defendant could be immediately terminated from TASC for leaving treatment without notifying TASC that his treatment needs required reevaluation.

Testifying in his own behalf, defendant admitted that one condition of his probation was that he receive TASC treatment and enroll in the Lake Villa in-house facility. He also admitted that he knew leaving the facility was a violation of the conditions of probation, but nonetheless did leave. Defendant further testified that he went to the Gateway House facility at Lake Villa on May 31. During a group interview he stated that he did not want to be at the facility but that the court had said he had to

be there. According to defendant he was not accepted into the program after this interview and was told to return to the TASC office in Chicago. When he saw Joseph Gioia there he told him he had not been accepted into the program and that he could not "hack" the way the interview had been conducted. He also asked Gioia for help in getting into another program but Gioia refused and told him he would have to beg Gateway to take him back. On June 10 defendant contacted a man named Alex Webber at another drug program, was accepted, and was scheduled for a placement interview late in July. However on July 24 defendant broke his leg and was hospitalized until September 2. Defendant testified that he was still willing to enter Webber's program.

Alex Webber, the assistant clinical director of the Center for Addiction Problems, testified that one function of his office was to place people in drug-treatment facilities. In June 1978 defendant came to him and was accepted as a patient. Prior to defendant's accident arrangements had been made to place him with Safari House, a live-in drug treatment facility. Webber testified that if defendant were to receive a sentence of probation he could still be placed with Safari House.

Prior to sentencing defendant explicitly waived his right to a presentence investigation report. Defendant elected to be sentenced under the Illinois sentencing act passed in 1977. (Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1003—1—2 through 1008—2—4.) In imposing the three sentences we have previously detailed, the trial court specified that no credit was to be given for time defendant had spent on probation.

## I

■■ Defendant contends that this evidence was insufficient to establish by a preponderance of the evidence, the applicable standard in a probation-revocation hearing (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—6—4(c)), that he had violated the terms of his probations. As to the charge that defendant failed to report to his probation officer as required, we agree that the proof was insufficient. No evidence or testimony was introduced concerning those reporting requirements. The woman who apparently was defendant's probation officer, Denise Weeks, did testify. But she was not asked what defendant's reporting requirements were nor did she testify that he violated those requirements. However our summary of the evidence clearly establishes that the trial court did not err in finding that defendant violated his probations by failing to comply with the requirement that he enroll and participate in the TASC Gateway House drug program. Defendant admitted that this was a requirement and he admitted that he left the program. Although he attempted to some degree to suggest that he was rejected by Lake Villa personnel this was contradicted by his own admissions to Denise Weeks and to Joseph Gioia.

Defendant's evidence that he subsequently attempted to enroll in another drug program, even if believed by the trial court to be a sincere effort, did not constitute compliance with the specific requirements set out when he was given probation. We find no error in the determination of the trial court that defendant violated the terms of probation.

## II

Defendant also contends that the trial court erred in revoking his probations and, having so revoked them, imposed excessive sentences. However, because we determine that a new sentencing hearing must be held on other grounds, we do not reach this issue.

## III

■■ We have noted that the defendant explicitly offered to waive the presentence investigation report and the trial court accepted that waiver. Defendant contends that under Illinois law that waiver was impermissible. We agree. Prior to February 1, 1978, section 5—3—1 of the Unified Code of Corrections provided:

> "A defendant shall not be sentenced before a written presentence report of investigation is presented to and considered by the court where the defendant is convicted of a felony. The defendant may waive the presentence investigation and written report.
>
> The court may order a presentence investigation of any defendant." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—1.)

However, effective February 1, 1978, this statute was amended to eliminate the possibility of waiver except in the case of an agreed sentence:

> "A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court.
>
> However, the court need not order a presentence report of investigation where both parties agree to the imposition of a specific sentence, provided there is a finding made for the record as to the defendant's history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment.
>
> The court may order a presentence investigation of any defendant." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—3—1.)

Any doubt concerning the effect of the amendment has been resolved by the holding of our supreme court in *People v. Youngbey* (1980), 82 Ill. 2d 556, 561, that "the presentence investigation and report is a mandatory legislative requirement which cannot be waived except in accordance with the exception in the statute." Accordingly, because in this cause no such reports were prepared prior to the sentencing of the defendant, we

must vacate those sentences and remand the cause for a presentence investigation and report and a new sentencing hearing.

## IV

Defendant has also contended that the trial court was required to grant him credit for time served on probation as to the sentences imposed for acts he committed in 1973 and 1974. We address this issue because of the likelihood of its reoccurrence on remand. At the time defendant committed these offenses, October 1973 and February 1974, section 5—6—4(h) of the Unified Code of Corrections provided that time served on probation must be credited against any sentence of imprisonment imposed following revocation of a defendant's probation. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(h).) Effective July 1, 1974, this provision was amended, granting the trial court discretion to deny such credit. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4(h).) However, case law has clearly established that where the crime at issue was committed prior to the effective date of this amendment the defendant is entitled to the benefits of the provision in effect at the time the crime was committed. *People v. Saunders* (1978), 65 Ill. App. 3d 340, 382 N.E.2d 330; *People v. Bailey* (1978), 56 Ill. App. 3d 213, 371 N.E.2d 1266; *People v. Hayes* (1977), 54 Ill. App. 3d 617, 370 N.E.2d 68.

■■ The State contends that, having elected to be sentenced under the new sentencing act, defendant cannot claim the benefits of the prior law on mandatory credit for probation time. Without addressing the merits of this contention we note that in fact defendant should not have been permitted to elect under the new act as to the two crimes for which he received probation in December 1974. Section 8—2—4(b) of that act, effective February 1, 1978, provides in pertinent part:

> "If a sentence has been imposed before the effective date of this amendatory Act of 1977, the defendant shall not have the right of election even though his case has not been finally adjudicated on appeal; * * *." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b).)

Probation is, of course, a sentence under our statutes and has been considered such since the effective date of the Unified Code of Corrections, January 1, 1973. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—5—3.) Therefore, defendant, having already been sentenced to probation for these crimes in 1974, did not have the right to elect to be sentenced for them under the new act. (*People v. Mitchell* (1979), 76 Ill. App. 3d 878, 395 N.E.2d 696; *People v. Denier* (1979), 76 Ill. App. 3d 214, 394 N.E.2d 1073; *People v. Perkins* (1979), 67 Ill. App. 3d 911, 385 N.E.2d 184.) Clearly, if defendant was not entitled to elect to be sentenced under the new act for these crimes, then he could not be said to have elected to

forgo the benefits of the prior credit provision. The trial court erred in failing to grant defendant credit for the time served on probation as to the two crimes committed in 1973 and 1974.

## V

Defendant does not contend that he was automatically entitled to such credit for the third sentence, imposed for acts committed in 1977. However, he does contend that under the applicable statute the trial court abused its discretion in denying such credit. Because we remand this cause for a new sentencing hearing we do not reach this issue.

The finding of the trial court that defendant violated the terms of his probations is affirmed, his sentences are vacated, and the cause is remanded for a presentence investigation and report and a new sentencing proceeding in conformity with this opinion.

LINN, P. J., and JOHNSON, J., concur.