**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180064-U

Order filed May 4, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0064 Circuit No. 17-CM-265 |
| QUINCY A. WADDELL, | ) ) ) | |
| Defendant-Appellant. | ) ) | Honorable Edward A. Burmila Jr., Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Presiding Justice Lytton and Justice Wright concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The record establishes that defendant violated the terms of his probation, and therefore, the court did not err when it revoked his probation.

¶ 2     Defendant, Quincy A. Waddell, appeals from the Will County circuit court's order that revoked his probation. Defendant argues the State did not prove that he violated the terms of his probation. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Following a bench trial, the court found defendant guilty of three counts of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)). On March 17, 2017, the court sentenced defendant to 120 days in jail to be followed by 18 months of probation. The probation order required that defendant attend "[c]ounseling as deemed appropriate by the Probation Officer," and obtain compliance with the terms of the order within six months of its entry.

¶ 5        On January 4, 2018, defendant's probation officer, Ray Simpson, sent a probation violation report to the state's attorney. The report stated defendant had attended domestic violence counseling at Guardian Angel Community Service (Guardian Angel). On November 14, 2017, Simpson learned that defendant had been suspended from the program due to multiple instances of inappropriate conduct and communication with a female staff member. An employee of Guardian Angel told defendant that he could return to the program if he obtained a mental health evaluation and agreed to cease his attempts to have personal, inappropriate contact with agency staff. On December 20, 2017, defendant refused to sign the readmission paperwork and became argumentative to the point that he had to be removed from the group session. Guardian Angel characterized defendant's status as "non-compliant."

¶ 6        On January 8, 2018, the State filed a petition to revoke defendant's probation. The petition alleged that (1) as a condition of his sentence, defendant was ordered to complete a qualified domestic violence, partner abuse intervention program, (2) defendant was suspended from the program at Guardian Angel on November 14, 2017, "due to behaving inappropriately towards a female staff member," (3) Guardian Angel allowed defendant to reenter the program if he completed a mental health evaluation and signed an agreement to discontinue any inappropriate behavior, and (4) on December 20, 2017, defendant refused to sign the paperwork, became argumentative, and was removed from the group session.

¶ 7      At the hearing on the motion, the State first called defendant to testify. During defendant's first meeting with Simpson, Simpson told defendant that he would be required to complete domestic violence counseling. Defendant registered for counseling at Guardian Angel.

¶ 8      On November 14, 2017, Guardian Angel suspended defendant from its program. An employee of Guardian Angel said that defendant could return to the program if he paid a $75 fee and obtained a mental health evaluation. Before the suspension, defendant "liked" a picture of Guardian Angel intern Sidney Jackson on Facebook. Defendant thought that his action was positive.

¶ 9      On December 20, 2017, defendant paid the fee and returned to the program. During the group session, Jackson asked defendant to sign paperwork stating that he had to restart the classes. Defendant refused to sign and asked why he had to start over. Jackson responded, "it's just something you have to do." Defendant continued to refuse to sign the form but did not raise his voice or become argumentative. Jackson asked defendant to leave the group session. Defendant told Simpson that he was leaving the Guardian Angel program and intended to switch to the Hope for Non-Violence program. The State filed its petition to revoke probation before defendant enrolled in the new program.

¶ 10      Sharon Allport, the coordinator of Guardian Angel's partner abuse intervention program, testified that defendant started the program twice. Defendant first enrolled in the program in August or September 2017. During the September 21, group session, defendant asked intern, Devon Mitchell, if she was married. After the session, Mitchell told Allport that defendant's statement made her "very concerned." Mitchell spoke to defendant about her concerns.

¶ 11      The following week, the group discussed relationships, and if the members were in a current relationship or desired to be in a future relationship. Defendant said that he wanted to be

in a future relationship with Mitchell. After the session, Allport told defendant that his statement was inappropriate. Defendant said he was "just joking." Mitchell told Allport that she felt uncomfortable having defendant in her group sessions. In response to Mitchell's concerns, Allport informed defendant that he could no longer attend the Thursday evening session and offered to let him attend the Wednesday evening session. Defendant accepted the offer and began attending the Wednesday night group.

¶ 12    Following defendant's first Wednesday group meeting, Jackson notified a Guardian Angel manager that defendant had "liked" one of her "very very old Facebook picture." Allport spoke to a program manager about Jackson's concern, and contacted Simpson. Defendant did not attend the group sessions for at least one month. Allport terminated defendant's enrollment on December 5, 2017.

¶ 13    Eventually, defendant contacted Allport and asked to return to the program. Allport told defendant that he would have to pay a $75 fee and restart the program. Defendant indicated that he understood the requirements. Defendant returned for a group session in December. When Jackson asked defendant for the payment and to sign paperwork, defendant became "very agitated." Defendant said that he was not required to restart the program and refused to sign the forms. Allport directed defendant to exit the group session. Defendant left the meeting and was terminated from the program. Defendant was not allowed to return to the program because he continually crossed boundaries with the staff and made them feel uncomfortable.

¶ 14    Simpson testified that on August 22, 2017, he told defendant that he was required to attend domestic violence counseling. Simpson gave defendant the information for the Guardian Angel and Hope for Non-Violence programs. Following defendant's enrollment, Guardian Angel informed Simpson that "there was a short series of inappropriate comments and conduct between

[defendant] and one or more members of the staff." In December 2017, Simpson received notice that Guardian Angel had suspended defendant's enrollment. Simpson told defendant that he was required to complete domestic violence counseling and advised defendant to complete the steps to re-enroll in the Guardian Angel program. Simpson noted that defendant had been "resistant to going to classes in general" and was opposed to the re-enrollment requirements. Thereafter, Guardian Angel notified Simpson that defendant attempted to restart the program, but when he returned to the group session, he "created some type of disturbance and then was asked to leave and was subsequently permanently discharged from the program and banned from all property."

¶ 15 On cross-examination, Simpson said that when he met with defendant in December, defendant indicated that he intended to enroll in a different domestic violence counseling program. Simpson required defendant to "comply with the recommendations of the program where he was enrolled." Following this question, defense counsel asked:

"Q. Okay. And did you have—would it also be sufficient for [defendant] to sign up with Hope and take his domestic violence counseling there instead?

A. Yes, it would have been.

Q. Okay. And, Mr. Simpson, [defendant] was never given a time, a time limit on completing his counseling, correct?

A. His probation order says compliance within six months of the entry of the order.

Q. Okay. And [defendant] was not released from jail until July, correct?

A. Yes.

- 5 -

Q. And the order was entered in March, correct?

A. Correct, so—

Q. So that would have been impossible?

A. Well, in instances like that for my purposes I start the clock when they're available to be supervised.

Q. So just to be clear, what was written in the sentence order was not possible?

A. Had he engaged in the counseling upon referral it certainly would have been.

Q. Well, he was in jail for the first five months out of—

A. As I said, for my purposes of supervision I start the clock on those types of conditions when I make the referral, so six months from August 22nd. Obviously he would have had to enroll immediately since it's a 26 week program."

¶ 16    The court found that defendant had violated his probation when he intimidated Guardian Angel staff by visiting the Facebook pages of two employees and was suspended from the program. Following the filing of defendant's motion to reconsider, the court acknowledged that it had misspoke, but noted that there were "three distinct instances that were testified to of [defendant's] attempts to contact the people [at Guardian Angel], including the one instance of him saying the name out, that that's who he expected to have his future relationship with." The court concluded the evidence was sufficient to infer that defendant intended to intimidate the Guardian Angel employees and denied defendant's motion. The court resentenced defendant to 225 days in jail. Defendant appeals.

¶ 17                                    II. ANALYSIS

¶ 18          Defendant argues the evidence failed to show that he violated the terms of his probation. Specifically, the State did not show that defendant (1) intimidated or placed the staff at Guardian Angel in fear, and (2) could not complete the counseling requirement at another facility before his probation expired. We find the State proved defendant violated the terms of his probation when defendant stopped attending counseling for several weeks, and therefore, could not complete the counseling requirement in the six-month period prescribed by Simpson.

¶ 19          The State must prove by a preponderance of the evidence that defendant violated the terms of his probation. 730 ILCS 5/5-6-4(c) (West 2016); *People v. Salamon*, 126 Ill. App. 3d 1066, 1070 (1984). The circuit court's decision to revoke a defendant's probation is only subject to reversal if it is contrary to the manifest weight of the evidence. *Salamon*, 126 Ill. App. 3d at 1070. "A decision is against the manifest weight of the evidence only where an opposite conclusion is clearly apparent or where the findings appear to be unreasonable, arbitrary, or not based on the evidence presented." *In re T.J.D.*, 2017 IL App (5th) 170133, ¶ 29.

¶ 20          In this case, the sentencing order required defendant to attend counseling within six months of March 17, 2017. Defendant's jail sentence, which ran until July 2017, rendered this directive practically impossible. However, Simpson interpreted this directive as applying prospectively from his August 22, 2017, meeting with defendant. According to Simpson, defendant had six months from this date, the date of his counseling referral, to complete the domestic violence counseling. Defendant's suspension and requirement that he restart the program made it impossible for defendant to complete the 26-week class in the required 6-month period. Although the State's petition only alleged defendant's suspension violated the terms of his probation, it is the effect of the suspension that caused the violation—defendant could not satisfy the requirement of the order

in the six-month time period. Therefore, this evidence established the probation violation. We note that while the court did not provide the above-described basis for the probation revocation, it is conclusively established by the record, and we may affirm the court's ruling for any reason supported by the record. See *People v. Anderson*, 401 Ill. App. 3d 134, 138 (2010) (appellate court reviews the circuit court's judgment not the reasons provided and may affirm on any basis supported by the record if the judgment is correct).

¶ 21        Defendant argues that Simpson's testimony establishes that "it would have been sufficient for [defendant] to enroll in the program at Hope in January of 2018 after [he] was removed from the program at Guardian Angel." Defendant's argument derives from the following exchange.

"Q. Okay. And did you have—would it also be sufficient for him to

sign up with Hope and take his domestic violence counseling there instead?

A. Yes, it would have been."

Contrary to defendant's argument, Simpson did not mention that "it would have been sufficient" for defendant to enroll in the Hope program in January 2018. Instead, this testimony relates to Simpson's direct examination statement that he gave defendant the name of two different domestic violence counseling programs, and either program would have satisfied the counseling requirement of his probation. This reading is supported by the exchange that immediately followed the passage cited by defendant. There, Simpson states "for my purposes of supervision, I start the clock on those types of conditions when I make the referral, *so six months from August 22nd*. Obviously he would have had to enroll immediately since it's a 26 week program." (Emphasis added.) In other words, Simpson states that defendant had one shot to complete his counseling requirement, and that he could do so using either program. Any other reading of this exchange would render the six-month compliance requirement completely meaningless.

¶ 22                          III. CONCLUSION

¶ 23        For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 24        Affirmed.