*In re* ALFREDO SERNA, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ALFREDO SERNA, Respondent-Appellant.)

First District (2nd Division)   No. 77-1903

Opinion filed December 26, 1978.

---

[1] Justice Brown participated in this decision while assigned to the Illinois Appellate Court, First District.

Ralph Ruebner and Michael Mulder, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

The respondent, a 15-year-old boy at the time of the proceedings below, appeals an order of the circuit court of Cook County which revoked his supervision, found him delinquent, adjudged him a ward of the court, and committed him to the Department of Corrections.

The issues on appeal are: (1) whether the conditions of supervision imposed by the court following the respondent's admission to the charge of criminal damage to property (Ill. Rev. Stat. 1977, ch. 38, par. 21—1(a)) were unconstitutionally vague; and (2) whether the trial court erred in ordering the respondent's commitment to the Department of Corrections following his admitted violation of section 21—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 21—1(a)) and the revocation of his supervision based on his admitted truancy from school in violation of section 2—3(b) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—3(b)).

On August 6, 1976, a petition for the adjudication of wardship was filed in which the respondent was charged with criminal damage to property (Ill. Rev. Stat. 1977, ch. 38, par. 21—1(a)) for painting signs on a school wall. Although the respondent admitted to this charge, there was no finding of delinquency at the hearing on this petition. However, the

court placed the respondent on six-month's supervision with a probation officer. In so doing, the court stated as follows:

"THE COURT: You don't ever do that again. Understand?

✽ ✽ ✽

And you listen to this probation officer. Listen to your mother, and stay out of trouble. *You are going to get rules to follow. You follow those rules.* You stay out of trouble. After six months the case will be dismissed. If you get in any trouble I can't help you. Understand that? ·

✽ ✽ ✽

Stay out of trouble." (Emphasis added.)

On December 8, 1976, while the respondent was still under supervision, a two-count supplemental petition was filed in which the respondent was charged with the violation of the terms and conditions of his supervision in that he was not attending school.

At the January 19, 1977, hearing on the supplemental petition, the respondent admitted that he had been truant since October and stated that he understood that his admission to the charge of truancy could result in the revocation of his supervision and his commitment to the Department of Corrections. Thereafter, the court revoked the supervision, entered a finding of delinquency "as to the original petition," and adjudged the respondent a ward of the court. On May 18, 1977, the court ordered the respondent committed to the Department of Corrections.

## I.

No one disputes the power of the court to place the respondent on supervision without a finding of delinquency in the original hearing. (See Ill. Rev. Stat. 1977, ch. 37, par. 704—7.) Nor does anyone dispute the power of the court to revoke that supervisory status and commit the respondent to the Department of Corrections on the basis of the original petition. (See Ill. Rev. Stat. 1977, ch. 37, par. 705—3(9).) However, the power to punish and the rules defining the exercise of that power must not be confused. It has been said that "the first desideratum of a system subjecting human conduct to the governance of rules is an obvious one: there must be rules." (Fuller, Law and Morality 46 (2d ed. 1965).) We find that the trial court failed to supply the respondent with this obvious essential.

Section 5—3(9) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—3(9)) provides that "[r]ules or orders of court *must specify* the term and conditions of supervision under this Act." (Emphasis added.) Upon a review of the report of the proceedings on August 6, 1976, in which the respondent was placed under supervision, we find nothing to

indicate that the court did in fact supply the respondent with a written order specifying the conditions of his supervision despite its promise to do so. Moreover, even assuming that such written rules were formulated, there is nothing in the record to indicate that the respondent received them.

We think when the trial court advised the respondent that he was "going to get rules to follow" that before he is found to have violated those rules, the record should show that he received the rules. This record is silent. Therefore, we conclude that the respondent did not receive the rules. Under such circumstances he cannot be found to have violated the rules.

We note that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." (*In re Gault* (1967), 387 U.S. 1, 13, 18 L. Ed. 2d 527, 538, 87 S. Ct. 1428, 1436.) Although recognizing that not all of the constitutional guarantees afforded adults have been applied to juveniles (see, *e.g., McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976), we nevertheless are of the opinion that the principles of due process encompassed within the void-for-vagueness doctrine are so fundamental that there can be no doubt as to their applicability to juveniles. Moreover, insofar as the ultimate consequences of the respondent's violation of the conditions of his supervision so closely parallel those of an adult's violation of a penal statute (see *In re Gault* (1967), 387 U.S. 1, 27, 18 L. Ed. 2d 527, 546, 87 S. Ct. 1428, 1443-44), we are also of the opinion that the principles and tests for vagueness applied to penal statutes are equally applicable to the conditions of the respondent's supervision at issue here.

A law fails to meet the requirements of the due process clause if it is so vague and standardless as to either leave the public uncertain as to the conduct it prohibits or to leave judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. (*Giaccio v. Pennsylvania* (1966), 382 U.S. 399, 402-03, 15 L. Ed. 2d 447, 449-50, 86 S. Ct. 518, 520-21; see *Cramp v. Board of Public Instruction* (1961), 368 U.S. 278, 287, 7 L. Ed. 2d 285, 292, 82 S. Ct. 275; *Connally v. General Const. Co.* (1926), 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126; *People ex rel. Duffy v. Hurley* (1949), 402 Ill. 562, 567, 85 N.E.2d 26.) We also think that the court's admonishments "to stay out of trouble" and "to listen to his mother and to his probation officer" are constitutionally infirm. These general and unlimiting charges, although always good advice, sweep so broadly that the respondent necessarily was required to guess as to whether his truancy from school would fall within their scope. We do not think they provided the trier of fact with any objective criteria by which to measure the respondent's compliance with them.

■■ For the foregoing reasons, we find that the trial court erred in revoking the respondent's supervision on the basis of his violation of these conditions. Because we reverse the trial court's order of commitment to the Department of Corrections, we need not consider the second issue raised by the respondent.

Reversed.

STAMOS, P. J., and PERLIN, J., concur.