THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEONARD SUSBERRY, Defendant-Appellant.

First District (1st Division)   No. 77-798

Opinion filed January 16, 1979.

556

James A. Stamos, of Chicago (Harmon Gallant, of Gallant and Chapekis, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joseph P. Quirk, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Lenard Susberry (spelled in the briefs "Leonard Susberry") (defendant), was tried before a jury for alleged violations, on November 16, November 27 and December 14, 1973, of the statute pertaining to criminal housing management. (Ill. Rev. Stat. 1973, ch. 38, par. 12—5.1.) Verdicts of not guilty were returned as to the two November dates and a verdict of guilty was returned as to December 14, 1973. On June 21, 1974, the trial court fined defendant $500 and sentenced him to probation for 18 months. Close to 1 year later, on April 7, 1975, the trial court entered an order revoking probation and sentenced defendant to imprisonment for 6 months. On motion of defendant this court allowed leave to defendant to file a late notice of appeal.

In this court defendant contends that the criminal housing management statute is so vague and lacking in standards that it violates requirements of due process; the complaint against defendant did not charge an offense with specificity and thus did not apprise him of the nature of the charge; defendant did not have effective assistance of counsel; defendant's probation should not have been revoked and the sentence is excessive.

Our examination of the briefs and the complete record convinces us that it is incumbent upon this court to consider only the issues pertaining to revocation of the probation.

The record shows that after the original judgment entered against defendant on June 21, 1974, his private counsel filed no notice of appeal. Defendant's probation was revoked and the sentence of imprisonment was entered on April 7, 1975. On April 22, 1975, the same attorney filed a notice of appeal from this order. Thereafter this attorney did nothing further to process the appeal. On April 29, 1976, the trial court entered an order directing the attorney to appear before the court in person on a day

certain or be held in contempt for dilatory practice. Even this order was apparently not sufficient to obtain progress in the appeal from the probation revocation. On July 6, 1976, the trial court dismissed the appeal for failure to comply with the rules.

Defendant then obtained new counsel. A motion was made to vacate the order of dismissal. This motion was denied with the direction that new counsel, who represent defendant in this court, seek permission here for leave to file the late notice of appeal. On June 20, 1977, on motion of defendant, this court entered an order granting defendant leave to file a late notice of appeal. This court then had before it and believed that it was acting only upon the same notice of appeal which had been timely filed on April 22, 1975, and then dismissed on July 6, 1976. A copy of that notice of appeal was transmitted to the trial court for filing by the clerk of this court.

We are presently advised that the papers filed by defendant's present counsel in this court also included a document headed "Late Notice of Appeal." This document prays no relief. It describes both the original judgment on June 21, 1974, and the judgment for revocation of probation entered April 7, 1975. It was never the intention of this court to grant leave to file a late notice of appeal pertaining to the original judgment of June 21, 1974. This notice of appeal was apparently never filed in the trial court.

■■■ To clarify the entire matter, we now hold that we intended to and did vest this court with jurisdiction only to review the revocation of probation and sentencing proceedings which occurred on April 7, 1975. Therefore we conclude that we are without jurisdiction to consider any of the contentions of the defendant pertaining to the original conviction of 1974. (See *People v. Schultz* (1975), 27 Ill. App. 3d 844, 848, 327 N.E.2d 334; *People v. DeTienne* (1974), 17 Ill. App. 3d 708, 309 N.E.2d 38, *appeal denied* (1974), 56 Ill. 2d 588.) In addition, we cannot construe the notice of appeal pertaining to the probation revocation as granting us authority or jurisdiction to review the initial judgment of conviction. (See *People v. Stueve* (1977), 66 Ill. 2d 174, 178, 361 N.E.2d 579.) Therefore, as above stated, this opinion is limited to a discussion of the issues pertaining to revocation of probation and the sentence imposed by the order of April 7, 1975. Our study of this situation convinces us that we need not consider the argument by defendant that the sentence is excessive. It remains then to consider the revocation of probation. The facts pertinent to this issue follow.

On August 20, 1970, defendant purchased a building at 1007 East 41st Place and 4119-29 South Ellis in Chicago. The property contained 37 apartment units, all of which required extensive repairs. Defendant began to repair the units and to rent them upon completion of the repairs. On

November 16, 1973, building and plumbing inspectors of the City of Chicago visited the premises in response to a tenant's complaint. A second inspection occurred on November 27, 1973, by inspectors and State's Attorney's investigators, who conducted tenant interviews. On December 3, 1973, 10-day warning letters were served on defendant and his agent for rent collection. On December 14, 1973, a final inspection was made by the building and plumbing inspectors. Institution of these proceedings followed.

At trial, building inspectors testified that they found the building to be in defective condition and dangerous to the health and safety of its inhabitants. For example, four exterior elevations had fractured walls with loose and falling bricks. The rear porch was rotted, with broken parts and damaged uprights. All three floors and the basement were infested with rats and cockroaches. There were no refuse containers on the rear porches so that rubbish and debris were strewn about. The inspectors also noted plumbing code violations.

On June 21, 1974, the trial court entered a judgment order which provided that defendant be fined $500 and placed on probation for 18 months. The common law record reflects that the order also provided:

"Condition of probation is that building is to be reinspected six months from today and reports forwarded to the defendant, state's attorney and to the Court."

The printed draft order granting probation entered by the trial court that day recites this same condition regarding probation. It also contains the usual statement concerning a monthly report to the probation officer by defendant and performance of statutory conditions, but contains no additional statement or information regarding reinspection of the property.

The report of proceedings shows that at the court hearing held June 21, 1974, prior to entry of the order, the trial court stated that there would be a reinspection of the property in 6 months. The trial court also stated that the State's Attorney would furnish defendant and the court with copies of the reinspection report. The court added:

"If I find that the building remains in violation, I am not talking about a leaky faucet, I am talking about a serious violation, which would be a detriment to the health and welfare of any occupants, I will then revoke the probation, I will then sentence the Defendant at that time to the remaining six months."

In addition, in another part of his lengthy statement, the trial court said:

"In six months if he [defendant] violates probation by not having the building in good repair, he will serve the remaining six months in the House of Correction."

The defendant then asked the trial judge what the situation would be if the building was given to the mortgage company. The trial court responded that if the mortgage company did nothing, "I will probably revoke your probation. If I find that you give it to anyone except a municipal body, I will probably revoke your probation. * * *, I am giving you an opportunity to rehabilitate the building."

The trial court also referred to "good faith" as a test of whether there had been a violation of probation. The trial court then stated that, "If the building is no longer capable of having inhabitants, I will consider it in full compliance."

The property was reinspected on March 19, 1975. The State's Attorney then filed a petition to revoke defendant's probation alleging that defendant violated a condition of probation by not repairing his building so that it came into complete compliance with the building code of the City of Chicago.

A hearing was conducted on April 7, 1975. Again inspectors testified to building code violations such as: loose and missing siding and wood, broken windows, missing sashes, falling bricks, flaking masonry, rear porch in a state of disrepair, rotten, defective and deteriorated building supports, roaches and debris. Photographs of the property were received in evidence. One of the State's witnesses, a plumbing inspector, stated that all but one of the plumbing code violations had been corrected and that about 75 percent of all the previous violations had been corrected.

Defendant testified to the repairs that had been accomplished. He estimated that he had spent approximately $20,000 rehabilitating the building in the 6-month period. Defendant further testified that he made repeated attempts to arrange a meeting between himself, his attorney and the inspectors, for a better understanding of what was required of him. He was met with a total lack of cooperation. He made at least three appointments to have inspectors check the progress of the work being done by him but the inspectors did not appear. When the reinspection was made, defendant was not permitted to be present. He testified that the results of the reinspection were not disclosed to him. These facts were not controverted by the State.

In defendant's brief he contends that the court abused its discretion in revoking his probation because the conditions of probation were vague and indefinite and the State failed to prove that defendant wilfully violated those conditions. The State maintains that the trial court did not abuse its discretion in revoking defendant's probation since the trial court had conditioned the probation on the defendant's complete elimination of any building code violations in the building and defendant failed to comply with that condition.

The Unified Code of Corrections states as general conditions pertaining to probation that the defendant shall not violate any criminal

statute and must report in person to the agency directed by the court. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3(a).) The same section of the statute provides that the trial court "may in addition to other conditions require" additional matters. This is followed by a statement of 10 varying conditions of probation which may be used by the trial court. The same section also provides that an offender sentenced to probation "shall be given a certificate setting forth the conditions."

■■ In our opinion, this language makes the situation plain that conditions of probation should not be orally stated but should be spelled out in the probation order in clear and unmistakable detail. The case at bar illustrates the dangers involved in attempting to impose conditions of probation by oral statements. Defendant contends, with a good show of reason, that the only condition actually imposed was a provision for reinspection. It is correct, as defendant points out, that the various verbal statements made by the trial court do not set out clear and unmistakable rules for completion of the probation. The record does not show that defendant ever received a certificate setting forth the conditions of his probation other than the statement concerning a reinspection of the property. This statement is not strictly a condition of probation since the reinspection of necessity could be accomplished only by the governmental agency and not by the defendant.

This situation is well illustrated by *People v. Serna* (1978), 67 Ill. App. 3d 406, 385 N.E.2d 87. There, this court reversed a judgment revoking probation. The court pointed out that the record did not show the formulation by the trial court of written rules setting out the conditions of the probation and did not indicate that such rules were ever received by the respondent. In our opinion, the provision in the Juvenile Court Act involved in *Serna* that the trial court "must specify the term and conditions of supervision" (Ill. Rev. Stat. 1977, ch. 37, par. 705—3(9)) is the legal equivalent of the provisions in the Unified Code of Corrections dealing with the conditions of probation as above cited.

*People v. Einoder* (1968), 96 Ill. App. 2d 174, 180, 238 N.E.2d 137, is another case holding specifically that the order granting probation must contain all the conditions of the probation. There, the trial court revoked the defendant's probation because he had allegedly violated one of the conditions by driving an automobile. On appeal, this court held that the revocation was improper. The draft order which placed the defendant on probation contained no provision prohibiting him from driving an automobile. The only indication that there was such a directive in the original probation order was the statement of the magistrate concerning his memory of what occurred at the original hearing. This court stated that, "[t]o hold that an oral statement made by the court at the time of entering a judgment * * * is binding, would be to change the time-honored rules of practice in the court." *Einoder*, 96 Ill. App. 2d 174, 180.

■ In our opinion, a reading of the report of proceedings convinces that defendant is correct. The lengthy statement made by the trial court can reasonably be construed to include varying conditions or requirements. We are impelled to conclude that these standards differ each from the other. When read together they are vague and indefinite. They do not adequately or reasonably inform the defendant of the conditions of his probation. (See *Serna*.) None of these conditions were included in the judgment order signed by the trial court. They may be gleaned only from a reading of the report of the proceedings held on June 21, 1974.

■ We therefore conclude that the only condition of probation to which defendant should be held is that specifically stated in the probation order regarding the making of the proposed reinspection within 6 months. It follows necessarily that defendant did not violate any condition of probation and the penalty of revocation was legally improper and should not have been imposed.

In addition, in a probation revocation hearing, the State has the burden of proving that the defendant wilfully violated the type of condition here involved. Section 5—6—4(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(d)) states that:

> "Probation, conditional discharge and periodic imprisonment shall not be revoked for failure to comply with conditions of a sentence which imposes financial obligations upon the offender unless such failure is due to his wilful refusal to pay."

■■ If the trial court actually ordered defendant to make repairs to his building, a financial obligation was necessarily imposed upon him. Thus, as a condition precedent to revocation, the State was obliged to prove that defendant wilfully violated this condition. (See *People v. Boucher* (1974), 57 Ill. 2d 225, 311 N.E.2d 679.) Also it was essential that a finding be made as to defendant's financial ability to meet this condition. (See *People v. Tidwell* (1975), 33 Ill. App. 3d 232, 238, 338 N.E.2d 113.) No such finding was made by the trial court. There was no evidence that defendant had the necessary funds, but wilfully refused to repair his property. On the contrary, defendant testified that he had spent approximately $20,000 on repairs and the State's own witness testified that 75 percent of the violations had been corrected. In the absence of proof of a wilful violation, we are obliged to conclude that revocation of defendant's probation was not legally proper for this additional reason.

Accordingly, the judgment of the trial court revoking defendant's probation is reversed.

Judgment reversed.

McGLOON and O'CONNOR, JJ., concur.