THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEON J. SALAMON, Defendant-Appellant.

Second District No. 2—84—0073

Opinion filed August 21, 1984.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Theodore Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Leon J. Salamon, pleaded guilty to retail theft over $300 (Ill. Rev. Stat. 1981, ch. 38, par. 16A—3(a)), and was sentenced to three years' probation on December 29, 1982. The defendant had petitioned to elect to be treated as a narcotic addict under the Dangerous Drug Abuse Act. (Ill. Rev. Stat. 1981, ch. 91½, par. 120.1

*et seq.*) The conditions of the probation order, set forth in full, were:

"A. Defendant shall not violate any criminal statute or law of any jurisdiction.

B. Defendant shall make a report to and appear in person before the probation officer of this court assigned to his case as frequently as requested by said officer.

C. Defendant shall permit his probation officer to visit him at his residence, or elsewhere, as requested by said probation officer, and shall answer all questions of said probation officer in regard to his living conditions, marital status, employment, etc.

D. [This provision (involving costs incurred) was deleted from the conditions.]

E. Defendant shall make restitution or reparation in the amount of $___ within ___ days from this date.

F. Defendant shall not leave the State of Illinois.

G. Defendant shall be placed in the TASC Program with an open mandate.

H. First 90 days of probation to be served in McHenry County jail."

TASC is an acronym for "Treatment Alternatives to Street Crime," which is a drug abuse rehabilitation program. The term "open mandate" used in the probation order meant that the defendant would be placed in whichever program facility first had an available bed. Because the defendant was on parole from Cook County, consent to his participation in the TASC program was sought and obtained from his parole officer and the Prisoner Review Board.

During the 90-day period the defendant spent in the McHenry County jail, he saw his probation officer, Jim Woolford, twice, and saw the TASC supervisor, Alexander Rinaldi, two or three times. Defendant's probation officer explained to him that as soon as a bed opened at TASC, all his contacts with him from that point on would be through TASC monitoring, and that he would have knowledge of his situation from TASC until treatment would be ended. Rinaldi testified he told the defendant that if for any reason he was released from McHenry County jail, that he should notify Rinaldi's office "as far as where he would be living and telephone number and which we can contact him at, so when a bed did become available for him we could contact him and have him in that facility at that time or we would lose the bed." Although Rinaldi did not give the defendant a business card with a phone number on it, he testified he told him that if he did get released from the McHenry County jail, that he could get in touch with the officers at the booking desk, and that they would give him

Rinaldi's phone number and office address. At an earlier hearing, Rinaldi testified the defendant would not be monitored by the TASC program until he was placed.

The defendant was not placed in a TASC program prior to the expiration of his 90-day jail sentence. However, because Cook County had another parole hold on him under an alias, "Jeff Collins," the defendant was transferred to the Cook County jail for two days and then to the Department of Corrections. Apparently, only the parole hold under the name "Salamon" had been cleared so that the defendant could be placed in the TASC program in connection with the McHenry County probation order. The defendant was incarcerated at the State prison in Joliet until April 29, 1983, when he was released on parole.

Because TASC had not heard from the defendant, a petition to revoke his probation was filed in McHenry County in June 1983, and he was arrested in July. Both Rinaldi and Woolford tried to phone the defendant when they learned he had been released from Joliet, but the number was disconnected. The defendant's wife had moved during the time he was incarcerated in McHenry County jail. There was testimony that he was released on parole to his current address.

A probation revocation hearing was held during which the defendant testified he talked with Rinaldi twice while he was incarcerated in McHenry County jail, and that he was not supposed to contact Rinaldi when he got out; he said he was in jail for the 90 days waiting for Rinaldi to pick him up and take him to the program. He testified he explained to the parole board in Joliet about the TASC program, and that the board included enrollment in TASC as a condition on his parole plans. He testified that when he was released on parole from Joliet, he was assigned to three different parole officers before he actually was able to have an appointment with one, and that he told his third parole officer, Arthur Banks, whom the defendant testified he saw approximately once a week, about the TASC program, but that Banks had to give him another report date since his office was in the process of relocating and he did not have time to direct the defendant into a program at that time.

Banks was not called to testify at the revocation hearing. The court revoked the defendant's probation, and sentencing was continued twice at the defendant's request in order to allow defense counsel time to talk with Banks in order to clarify some of the information obtained from Banks and included in the presentence report. The report included in the record showed that Banks said that the TASC program may have been recommended by the parole board, but that

defendant had not been ordered to attend. He reported the defendant was uncooperative and failed to follow instructions to report to Banks once every other week. Banks had not seen the defendant for the entire month prior to August 22, 1983, when the defendant was arrested on a theft charge in Cook County. After sentencing hearing, the court sentenced the defendant to the Department of Corrections for four years, and he appeals.

He contends he was not to blame for his failure to be placed in the TASC program. He argues the probation order did not include a specific provision that he contact Rinaldi and that, therefore, he had no obligation to do so. In support, he cites *People v. Susberry* (1979), 68 Ill. App. 3d 555. In that case, the order revoking the defendant's probation was reversed where the court found the defendant had not violated the conditions of his probation as set forth in the probation order. At sentencing there, the court had made a lengthy oral statement which included generally the conditions which were alleged to have been violated by the defendant as the basis for the revocation petition. The only specific condition included in the probation order was:

> " 'Condition of probation is that building is to be reinspected six months from today and reports forwarded to the defendant, state's attorney and to the Court.' " 68 Ill. App. 3d 555, 559.

With regard to that provision, the court noted that statement was not strictly a condition of probation, since the reinspection necessarily could be accomplished only by the governmental agency and not by the defendant. The court agreed with the defendant that the court's lengthy oral statement during sentencing could be construed to include varying conditions or requirements which, when read together, were vague and indefinite, and did not adequately or reasonably inform the defendant of the condition of his probation. (*People v. Susberry* (1979), 68 Ill. App. 3d 555, 562.) Accordingly, that court reversed the revocation of defendant's probation.

■ The condition included in the probation order here was that the defendant "be placed in the TASC program, with an open mandate." Somewhat similar to the condition in *Susberry*, the placement of the defendant in the TASC program necessarily could be accomplished only by the governmental agency and not by the defendant. However, unlike *Susberry*, there were no conditions or requirements here which were vague or indefinite; the defendant was simply instructed to notify TASC upon his release from the McHenry County jail so TASC would know where to locate him when a bed became available. The defendant admitted he did not try to call TASC. His defense was that TASC never picked him up from the McHenry County

jail, he was not told to call TASC, and after his release from the Department of Corrections, he told his third parole officer about the TASC program, but the officer had not had time to get him into a program.

In a revocation hearing, the State need only establish a violation of the conditions of probation by a preponderance of the evidence. (*People v. Hoga* (1982), 109 Ill. App. 3d 258; *People v. Crowell* (1973), 53 Ill. 2d 447.) The termination of probation is a question which rests within the sound discretion of the court, and absent a clear showing that the decision to terminate was against the manifest weight of the evidence, that determination should not be overturned. (*People v. Owens* (1983), 116 Ill. App. 3d 51; *People v. Stevens* (1981), 94 Ill. App. 3d 516.) A finding of a violation of probation is not *per se* against the manifest weight of the evidence merely because there is a conflict in the evidence; the trial judge is in a better position to weigh the testimony of the witnesses than a reviewing court, and only when the testimony is contrary to the weight of the evidence will the reviewing court substitute its judgment for that of the trial court. *People v. Crowell* (1973), 53 Ill. 2d 447, 451.

Although the performance of the condition here could not be complied with strictly by the defendant himself, nevertheless he was told by Rinaldi that if he was released from the McHenry County jail he was to notify TASC so that they would know where to reach him when a bed became available. Defendant admitted he did not do this, nor did he call his probation officer, and, further, he did not contact TASC even after his release on parole from the Department of Corrections. Even accepting defendant's claim that TASC was a part of his parole plans—which appears to be refuted by the presentence report—nevertheless, his parole from the Department of Corrections was related to his conviction for a crime separate and apart from the one for which he received a sentence of probation here. Consequently, his purported attempt to comply with the alleged TASC provision of his parole plans cannot be regarded as a novation, so to speak, of the previously imposed probation in McHenry County. *Cf. People v. Demma* (1980), 92 Ill. App. 3d 303, 307-08 (where the court found the defendant's evidence that he subsequently attempted to enroll in another drug program after leaving the first one in violation of his probation—even if believed by the trial court to be a sincere effort—did not constitute compliance with the specific requirements set out when he was given probation).

Defendant's contention that he could reasonably have assumed that his parole address was known by all interested authorities or

could easily have been determined by inquiry to the Prisoner Review Board is without merit. It has been held that the State is under no duty to inquire of the correctional officials in other jurisdictions regarding a defendant's whereabouts. (*People v. Washington* (1975), 28 Ill. App. 3d 812, 813-14; *People v. Beard* (1973), 15 Ill. App. 3d 663, 666, *aff'd* (1974), 59 Ill. 2d 220, *cert. denied* (1975), 421 U.S. 992, 44 L. Ed. 2d 483, 95 S. Ct. 1999.) It was the defendant's duty to keep TASC advised of his whereabouts so that he could "be placed." Although the order could have been drafted more carefully to cover the contingency that the defendant might not be placed in TASC before the expiration of his jail term, nevertheless, Rinaldi did anticipate that exact eventuality, and he clearly and directly orally instructed the defendant what he was to do if he was released before placement. Defendant failed to comply with this simple act, which was a prerequisite to his compliance with the conditions of his probation. As such, it is important to note here that Rinaldi's instructions to the defendant did not amount to an alteration of the terms of the defendant's probation, but instead were integral to the implementation of the defendant's probation. (*Cf. People v. Bellars* (1976), 38 Ill. App. 3d 350, 355 (where defendant's claim that his probation officer had no power to unilaterally alter the terms of his probation was not addressed by the court in view of the fact the violation of the probation officer's direction or order was not the sole basis for the revocation).) Having thus interfered with TASC's ability to place him in a program, defendant now claims innocence because "something was to be done to him as opposed to a requirement that he take some action himself." We cannot accept the defendant's claim.

The preponderance of the evidence has been defined as evidence sufficient to incline an impartial and reasonable mind to one side of an issue rather than the other. (*In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 13.) Although the defendant denied Rinaldi instructed him to call, the trial court was in the best position to judge the credibility of the witnesses, and it was inclined by the evidence below to find the defendant violated his probation. We are likewise inclined by the record before us, and find no abuse of the court's discretion in revoking the defendant's probation.

Accordingly, the judgment of the circuit court of McHenry County is affirmed.

Judgment affirmed.

SEIDENFELD, P.J., and NASH, J., concur.