THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CALVIN BUTLER, Defendant-Appellant.

Second District   Nos. 2—84—0667, 2—84—0719 cons.

Opinion filed October 18, 1985.

G. Joseph Weller and Robert Hirschhorn, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, and Frank Weiss, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Calvin Butler, was charged by separate informations in the circuit court of Lake County with the offenses of theft of property valued at over $300 (Ill. Rev. Stat. 1983, ch. 38, par. 16–1(a)(1)) and residential burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19–3). The defendant entered pleas of guilty and was placed on concurrent 30-months' probation on each charge. Pursuant to the plea negotiations, the residential burglary charge was reduced to burglary, and a misdemeanor theft charge was *nolle prossed.*

*Inter alia,* as conditions of probation on the theft conviction, the defendant was to perform 100 hours of public service and make restitution to the victim of the offense. On the burglary conviction, he was to perform 150 hours of public service, with credit against that time to be given for time spent working, if he was able to obtain full-time employment of at least 20 hours per week. A restitution hearing was held on June 4, but the victim failed to appear and the court set the restitution at zero.

A petition to revoke defendant's probation for failure to perform his public service requirement was filed and after a hearing, the probation sentences imposed on both convictions were revoked. Defendant received concurrent sentences of two years for theft and four years for burglary.

The defendant moved to reconsider the revocation of probation, alleging that he had been told by his probation supervisor to report to the YWCA; that he failed to report; he was given another assignment

to report to the Lake County courthouse where he completed four hours of public service work; he then requested he be placed at another work site; he began full-time employment on June 2, and was gainfully employed at all times between June 3 and June 29; he should receive credit for 20 days' work while fully employed; and he completed a total of 156 hours of public service.

The trial court agreed to give the defendant full credit for his employment against the 150-hour public service requirement on the burglary conviction, and vacated the revocation and sentence imposed for that offense, thus reinstating defendant's 30-month probation. The court refused to vacate the revocation of probation on the theft offense. It agreed, however, to vacate the two-year sentence imposed pending an updated presentence report and hearing as mandated in *People v. Coleman* (1983), 120 Ill. App. 3d 619. See also *People v. Harris* (1985), 105 Ill. 2d 290.

The sentencing hearing was held several days later and in mitigation, the defendant presented testimony from Rev. Alan Gibbons, who had employed the defendant to do landscaping work, and from the defendant's parents. The testimony from those witnesses indicated that the amount of time worked by the defendant which could be substantiated would be considerably less than the 156 hours previously alleged in his motion to reconsider. The hearing was continued for further recommendation from the probation department regarding the defendant's suitability for intensive probation. Since the defendant's probation on the theft charge had been revoked, the court allowed the State to file a motion for reconsideration of the matter of restitution to the victim. The court additionally directed the parties to reach an agreement on how many hours of outside employment credit should be applied against the defendant's 150-hour public service requirement in connection with his probation for burglary.

At the continuation of the hearing, the parties agreed 40 hours of credit should be applied against the 150-hour public service requirement. The State then indicated there were some misdemeanor charges pending against the defendant, and that a second petition to revoke his burglary probation was filed.

The sentencing for theft then proceeded, and the victim of the offense testified his out-of-pocket expenses were $1,259.81. The probation department reported it could supervise the defendant under its intensive probation program. After hearing argument, the court sentenced the defendant to four years in the Department of Corrections.

A second petition to revoke the defendant's sentence of probation imposed for burglary charged the defendant with one count of bat-

tery, two counts of obstructing a peace officer, and one count of criminal damage to property. The offenses charged arose during an incident which occurred on June 12, when police officers attempted to arrest the defendant following an argument between him and another man.

At the hearing, the court heard testimony from two police officers, and the court found all counts proved except the criminal damage to property count. Accordingly, the defendant's probation was revoked, and a seven-year sentence in the Department of Corrections was imposed following a sentencing hearing. Defendant appeals from both revocations and sentences and these matters have been consolidated for consideration by this court.

The issues presented for review are as follows, concerning the theft conviction: (1) whether the terms and conditions of the defendant's probation were too vague and ambiguous to inform him of his obligations, thereby negating any possible finding of violation of same; (2) whether the trial judge improperly assumed the role of prosecutor by questioning witnesses at the sentencing hearing; and (3) whether the defendant was deprived of the effective assistance of counsel. Concerning the burglary conviction, the issues are: (1) whether the defendant was deprived of the effective assistance of counsel for failing to seek a substitution of judges for cause at the second revocation hearing; and (2) whether the seven-year sentence is excessive.

Defendant first contends the terms of his theft probation as explained orally by the court were too vague and ambiguous to inform him of his obligations and, therefore, the resulting revocation cannot stand. The State asserts in response that the terms of the defendant's probation were clear and the revocation order must stand where the evidence supports the court's finding that the defendant wilfully violated them.

Defendant acknowledges that the State need only prove a violation of the terms of probation by a preponderance of the evidence (*People v. Salamon* (1984), 126 Ill. App. 3d 1066), but contends that fundamental precepts of due process were violated when his probation was revoked based upon his failure to comply with a condition "so vague as to be impossible to understand, let alone obey."

The defendant points out there were differences in the conditions of probation as reflected in the court's two oral statements, its written probation order, and its statement concerning its reason for revocation. The defendant further asserts that in none of the various statements was there imposed a "time frame" as to the public service condition, although the written order showed that the public service

"is to be completed at the date and time as determined by the Adult Probation Department." Defendant asserts that these differences and the lack of a time frame made the terms unclear, that he could not consciously have decided not to comply with them and, therefore, the court erred in finding that a wilful violation occurred.

The court's first statement concerning the conditions of probation was made when the terms of the plea agreement were explained to the court. The parties had suggested 100 hours public service as a condition for each offense. The court countered with 250 hours, 100 on the theft, 150 on the burglary, stating:

> "In addition, in the event he obtains full time employment, he will receive credit against, provided he is working full time, for each hour he works he will receive credit against the 150 hours on [the burglary], for 75 hours, and on [theft], he will receive credit for 75 hours. So, he will still have to do 100 hours, if he gets full time employment, but if you get full time employment, the time you are working will be charged up to the 150 hours against your work. All right, do you understand that negotiation?
>
> THE DEFENDANT: Yes, sir."

The court thereupon conditionally accepted the negotiated plea, and set the matter over pending a presentence report.

The conditions of probation were later clarified at the sentencing hearing.

> "THE COURT: All right, I will accept the negotiations, as tendered to the court on [the burglary], sentence the defendant to 30 months probation, 150 hours public service. I had agreed to give him credit against that.
>
> MISS ALEXANDER [Defense attorney]: If he had a job. He is not employed at this point.
>
> THE COURT: All right.
>
> MR. BARTELS [Prosecutor]: The terms of the negotiations were that the defendant will perform 100 hours public service, regardless of whether he is employed or unemployed. There is an additional 150 hours of public service that the defendant is to to get credit for if he is employed full time.
>
> THE COURT: All right, in other words, he is to do—All right, let me back up. On [the theft], I am accepting the plea to theft. On that charge he is to perform, as to that charge, 100 hours public service. He is to pay restitution to Richard Stanfell [the victim], in an amount which will be determined Monday, June 4, at a hearing on restitution. *** As to [the bur-

glary], he will be sentenced to 30 months probation, and 150 hours public service, against which he will be given credit for any time he works in gainful employment, provided that that gainful employment is more than 20 hours per week. Until such time as he obtains gainful employment, he will discharge his obligation for 150 hours by working public service every week, commencing next week, 20 hours per week. In addition, he will pay his court costs.

Now, do you understand what I contemplate on that public service?

THE DEFENDANT: Yes, sir."

The written probation order, filed May 18, set forth the public service conditions as follows:

"6. That the said defendant shall perform 100 hours Public Service Employment; that said Public Service is to be completed at the date and time as determined by the Adult Probation Dept."

At the hearing on the petition to revoke, the testimony of the public service coordinator of the probation department, Gerald Locke, was that the defendant had reported in directly from court on the date of sentencing. He was assigned to work that weekend at the YWCA, but he failed to report. He next reported 11 days later and was assigned to the Lake County courthouse, but returned to the probation department saying he could not get along. He was sent back to the county building, and the probation department received a call from the maintenance supervisor that he did not want the defendant there. A probation officer went over to the county building, and they resolved the problem. The defendant finished working that morning, completing four hours public service, but he never returned.

The defendant testified he began working for Reverend Gibbons doing landscaping work on approximately June 3 or 4. He testified he worked five days a week, eight hours a day, and earned $4.25 per hour. He reported to the probation public service department after the court put him on probation, and he talked to them about doing some other public service work other than at the county building. He contacted the probation department on Monday, June 25, and they assigned him to work at the Illinois State Beach. He was supposed to call a man down at the beach to find out when he was supposed to start working, but he had not yet done so.

On cross-examination, the defendant stated he did not go to the public service office on Saturday or Sunday, and never called during the week to set something up so that he could work on Saturdays or

Sundays. He just took those days off. He stated he understood he was ordered to do public service:

"A. [Defendant]: Well, the agreement was if I got a job, I wouldn't have to do the whole 250 hours, *I wouldn't have to do nothing but 100 hours*, and I contacted people Monday [June 25], and I was going to start at the beach on weekends." (Emphasis added.)

After argument, the court stated:

"I find that in fact he has violated the terms of his probation, by not reporting to public service, as ordered initially by the probation department, without any justification whatsoever. I further find that in his failure to return to the second public service ordered work, that he violated his terms again. And during this time period, he was not working. There is no evidence before the Court that he was doing anything other than not reporting. It's unfortunate that he couldn't get along with his fellow workers, but the fact of the matter is that he has to make an effort to get along, and that is the determination that has to be worked out with the probation department, and with the supervisors who are supervising his work. And in fact, his complaints were not with the work supervisors, but apparently some difficulties he was having with co-workers.

In any event, it is clear, he has not made an effort to discharge his responsibility, so far as public service ordered by the probation department, pursuant to my order, to be performed prior to his beginning employment."

In support of his argument for reversal on due process grounds, the defendant cites *People v. Young* (1970), 125 Ill. App. 2d 154. *Young*, however, merely recognized that a probationer was entitled to have the question of whether a violation had occurred determined in accordance with "generally accepted legal principles" and the determination cannot rest on suspicion or speculation. (125 Ill. App. 2d 154, 158.) The "generally accepted legal principles" referred to were those set forth in *People v. Price* (1960), 24 Ill. App. 2d 364, 376, to-wit: "[A] defendant is entitled to know the nature of the charge in advance of any hearing wherein he is alleged to have breached the order granting him probation and must be given an opportunity to answer any charge that has been preferred against him." The proof of the violation must be by a preponderance of the evidence, and the court's determination will be reversed only when it is contrary to the manifest weight of the evidence. See *People v. Drake* (1985), 131 Ill. App. 3d 466; *People v. Lee* (1984), 128 Ill. App. 3d 937.

■■ A probation revocation hearing is not a criminal adjudication and the defendant, at the probation revocation stage, is always a convicted felon. (*People v. Henderson* (1971), 2 Ill. App. 3d 401, 405.) Because of the unique status of such defendants, it has been held that the due process due them is not the same as that due defendants initially standing trial for the substantive offense. (*People v. Allegri* (1984), 127 Ill. App. 3d 1041, 1045; *People v. Lee* (1984), 128 Ill. App. 3d 937, 939.) The issue in a probation revocation proceeding is twofold: first, whether a probation violation actually occurred, and second, whether the purposes of defendant's probation are being served by his continued liberty. (*People v. Dowery* (1974), 20 Ill. App. 3d 738, *aff'd* (1975), 62 Ill. 2d 200, 206.) Because the outcome of the probation revocation proceedings is the curtailment of a defendant's liberty, due process requires a fair determination that acts forming the basis of the petition occurred, and that fairness be afforded the defendant during the proceedings. (*People v. Allegri* (1984), 127 Ill. App. 3d 1041.) Notwithstanding that, it has been held that even nonculpable conduct may form the basis of probation revocation where circumstances beyond the defendant's control frustrate the fundamental purpose or reason for the imposition of a sentence of probation. (See *People v. Davis* (1984), 123 Ill. App. 3d 349.) The act giving rise to the petition need not be criminal in nature (*People v. DeWitt* (1978), 66 Ill. App. 3d 146), and, if the underlying act is a criminal offense, it is a defendant's acts which violate the terms of probation and not the defendant's ultimate criminal responsibility for those acts. (*People v. Allegri* (1984), 127 Ill. App. 3d 1041, 1046-47.) "Probation is a privilege—not a right." 127 Ill. App. 3d 1041, 1044.

It must be granted that some degree of clarity in the terms of probation was lost, due in large part to the fact that the court was sentencing the defendant simultaneously, but differently, on two separate offenses. Nevertheless, the defendant's own testimony at the revocation hearing shows his understanding of the terms of the probation was that he had to perform 100 hours of public service on the theft charge regardless of any full-time employment to be credited against the 150-hour public service requirement on the burglary charge. The record also shows that defendant was duly notified of the charge against him and was accorded fairness during the proceedings.

Certainly the wisdom of having the conditions of probation spelled out in the probation order, as discussed in *People v. Susberry* (1979), 68 Ill. App. 3d 555, 561, relied on by the defendant, cannot be disputed. It is also indisputable, however, that it would be impossible for the court to detail in its probation order every aspect which would

lead to successful completion of the public service requirement. The probation statute specifically provides the court may order that the defendant perform some reasonable public service work, and that the defendant shall report to or appear in person before such person or agency as directed by the court. (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—6—3(a)(2), 1005—6—3(b)(9).) Further, the written probation order here specified that the defendant was "required to cooperate with any program outlined for his welfare by the probation officer under whose charge he has been placed or by the judge of this court, to the fullest extent of his ability during the period of this probation."

It is clear from the record that the defendant failed to comply with the public service requirement as directed by the probation department the very next day after he was sentenced to probation when he did not report to the YWCA. No explanation whatsoever for this failure was offered. The defendant suggests that this failure was attributable to the fact that the probation certificate was not served on him until June 12. He cites no authority which would excuse performance of a condition of probation until such time as the formal certificate is served and, in fact, it has been held that the conditions of probation become effective at the time of the entry of the probation order. (*People v. Cook* (1964), 53 Ill. App. 2d 454, 456.) The order here was filed on May 18. Defendant's first violation occurred the next day, May 19, when he did not report to the YWCA.

■ The evidence shows the defendant understood the terms of his probation, and did not comply with them. Accordingly, the court's judgment revoking probation was not against the manifest weight of the evidence and no reversal is warranted.

■ The defendant next contends the court improperly questioned defense witnesses on an immaterial matter at the theft sentencing hearing, and that the prejudice to him was patent since the court imposed a four-year sentence after the hearing, as opposed to the two-year sentence initially imposed upon revocation.

The two-year sentence was vacated on defendant's motion to reconsider. The basis for that motion was that an updated presentence report had not been prepared, and a sentencing hearing had not been held before sentence was summarily imposed by the court after revoking the defendant's probation.

When the first witness presented by the defendant at the sentencing hearing, Reverend Gibbons, the defendant's employer, testified equivocally and contrarily to the testimony given by the defendant at the revocation hearing concerning the extent of his full-time employment, the court questioned Gibbons in order to clarify the dates and

hours of defendant's employment. The court similarly questioned the defendant's parents, also presented as defense witnesses, in an effort to ascertain the actual extent of defendant's employment.

Based on prior representations made to the court at the hearing on the defendant's motion to reconsider the revocation, the defendant had been credited for this full-time employment with 150 hours, applied against his burglary probation public service requirement. Prior to that hearing, the defendant testified at the revocation hearing that he had been employed full-time, eight hours a day, five days a week, since approximately June 3 by Reverend Gibbons. After the markedly different testimony was given by Gibbons and the defendant's parents at the sentencing hearing on the theft offense—elicited in part by questioning by the court—the parties later agreed that the defendant should be credited with only 40 hours for full-time employment.

The State asserts the defendant has waived this issue since he failed to object to the court's questioning at the hearing. Waiver, of course, is the general rule in the absence of objection, yet even in *People v. Griffin* (1973), 12 Ill. App. 3d 193, relied on by the State, the court examined the defendant's abstract references and determined the court's questions, made for the purposes of clarification, were proper. No waiver of the issue was found in *People v. Johnson* (1980), 83 Ill. App. 3d 586, where the court recognized it was likely the defendant did not wish to interpose an objection for fear of "riling the judge by informing him his conduct had exceeded the bounds of propriety." (83 Ill. App. 3d 586, 588.) We will likewise consider the merits of the issue.

It is well established that a judge has a right to question witnesses in order to elicit the truth or to bring enlightenment on material issues which seem obscure (*People v. Wesley* (1959), 18 Ill. 2d 138; *People v. Marino* (1953), 414 Ill. 445), but that the right to do so is not unbridled (*People v. Santucci* (1962), 24 Ill. 2d 93). The propriety of such questioning must be determined by the circumstances of each case, and rests largely in the discretion of the trial judge. (*People v. Trefonas* (1956), 9 Ill. 2d 92.) Although the danger of prejudice to the defendant is lessened when the defendant is being tried without a jury (*People v. Palmer* (1963), 27 Ill. 2d 311, 315), the standard of judicial conduct requires a judge to be fair and impartial whether the defendant has a jury trial or a bench trial. *People v. Cofield* (1973), 9 Ill. App. 3d 1048, 1051.

The conduct complained of here did not occur at trial, but rather at the sentencing hearing, after the issue of the defendant's guilt had been determined. A sentencing judge is not confined to the narrow is-

sue of guilt, but is charged with selecting a punishment suitable to the offender as well as the crime and, in so doing, may consider the fullest information possible concerning a defendant's life and characteristics. (*People v. La Pointe* (1981), 88 Ill. 2d 482.) Quoting *Williams v. New York* (1949), 337 U.S. 241, 247, 93 L. Ed. 1337, 1342, 69 S. Ct. 1079, 1083, it was observed in *La Pointe* that:

> " '*** We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. ***' " (88 Ill. 2d 482, 497.)

Accepting that view, it has been stated that a trial judge, in determining the nature and degree of punishment, is not confined to evidence presented at trial, and he may search anywhere within reasonable bounds, for facts which may aid him in crafting a proper sentence. *People v. Ely* (1982), 107 Ill. App. 3d 102.

■ Upon review of the record, it is clear that the court did not usurp the role of the prosecutor as was the case in *People v. Cofield* (1973), 9 Ill. App. 3d 1048, where the trial judge himself called nearly all of the State's witnesses, conducted extensive examinations of those witnesses, and intimidated the complainant by threatening to send her to the Audy Home. The court's examination of the witnesses here was not designed to discredit their testimony, as was the case in *People v. Stephens* (1973), 12 Ill. App. 3d 215, nor was it immaterial to the issues before the court, as was the case in *People v. Bullard* (1977), 52 Ill. App. 3d 712, relied on by the defendant. In *Bullard*, the questions and comments of the judge suggested bias against the defendant, a black man, and his witnesses, where the court, *inter alia*, examined three of the defense witnesses, all white women, regarding their employment, education, drinking and drug abuse habits, resort to public aid, and their association with "colored men."

The trial judge here questioned the witnesses only after the prosecutor and defense counsel had finished their examination. The record shows that during the course of the court's questioning, defense counsel asked if the court would inquire of Reverend Gibbons how the defendant was paid so that the hours he worked could be reconstructed. The judge readily agreed, noting he felt it was his obligation to make such inquiries to ascertain the truth when sufficient evidence to clarify the matter has not been presented. As defendant suggests, it is quite true that the court's questioning was relevant to the matter of the credit which was applied against the public service requirement on the defendant's burglary probation, but that fact does not *ipso*

*facto* make the question of the defendant's employment immaterial to his theft conviction. It was clearly also relevant in the context of the sentencing hearing on the theft conviction in view of the testimony given by the defendant, under oath, at the revocation hearing that he was employed full-time. It is well settled that a court may consider at sentencing a defendant's perceived perjury or lack of veracity at an earlier stage of the trial proceeding. (*People v. Corrigan* (1985), 129 Ill. App. 3d 787; *People v. Speed* (1984), 129 Ill. App. 3d 348; *People v. Surles* (1984), 126 Ill. App. 3d 216.) Further, the question of defendant's employment was relevant and material to the issue of his rehabilitative potential.

We conclude the court's questioning did not exceed the bounds of judicial propriety, and that the sentence imposed is no indicium that prejudice was caused the defendant by the court's conduct. The court's comments at the continued sentencing hearing a week later show its consideration of the defendant's character and attitude was particularly influenced by his testimony regarding his employment at the revocation hearing. As such, the prejudice alleged to have been caused the defendant was, in fact, self-inflicted.

■ Defendant contends his counsel rendered ineffective assistance by presenting witnesses at the sentencing hearing whose testimony undermined representations made in his prior motion to reconsider, and by failing to move for a substitution of judge.

In *People v. Albanese* (1984), 104 Ill. 2d 504, the court adopted the United States Supreme Court dual-component rule enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for challenges to effectiveness of both retained and appointed counsel (see *People v. Royse* (1983), 99 Ill. 2d 163, 170), and rejected the single-component test set forth in *United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634, 641 (sixth amendment entitles defendants to representation that meets minimum standards of professional representation).

Quoting *Strickland*, the court said:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of

a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.

In adopting the rule, the court in *Albanese* indicated it did not foresee that the application of the *Strickland* rule would produce results that varied significantly from those reached under the previous one expressed in *People v. Greer* (1980), 79 Ill. 2d 103, 120-21 (actual incompetence of counsel entitles defendant to a new trial if the incompetence created such substantial prejudice that the trial result probably would have been different). The two components may be examined in either order, since it may often be easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 425-26; *Strickland v. Washington* (1984), 466 U.S. 668, 693, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069-70.

In the instant case, we believe the claim of ineffectiveness may be disposed of on the basis of the first component, since the record does not support defendant's allegation that his counsel's performance was deficient.

*Strickland* cautions that in order to be fair:

"[An] *** assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" (466 U.S. 668, 689, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065-66.)

Of particular cogency in this case, the *Strickland* court also noted:

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain

potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." 466 U.S. 668, 691, 80 L. Ed. 2d 674, 695-96, 104 S. Ct. 2052, 2066-67.

It is obvious from the circumstances at the time counsel presented these witnesses that her intent was to offer evidence in mitigation of the sentence to be imposed. Only a short time had elapsed since the defendant was first placed on probation, and the only change in circumstances was the full-time employment defendant himself testified he had obtained. Questions asked of the witnesses by defense counsel were designed to elicit testimony relating to defendant's dependability and performance as an employee, and to his stability as a member of an extended family unit. Nothing in the record indicates that counsel could have known the defendant's testimony concerning his employment was so exaggerated, or that the testimony given by persons who ostensibly had the defendant's best interests at heart would prove to be so pernicious.

We conclude counsel's performance in regard to the witnesses presented at the sentencing hearing was not deficient.

■ We similarly conclude counsel's performance was not deficient for failing to move for a substitution of judge for cause as permitted in section 114—5(c) of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1983, ch. 38, par. 114—5(c).) Defendant was represented at the July 7 sentencing hearing by the law firm of Stone and Grimes, specifically, by Cynthia Alexander and Jed Stone. The "florid" colloquy toward the conclusion of the hearing on that date occurred between the judge and Mr. Stone. A review of the record shows that any "heat" generated by the discussion did not operate to the defendant's prejudice, since the court acquiesced in Mr. Stone's recommendation to continue the sentencing hearing in order to permit the probation department to assess the defendant's eligibility for its intensive probation program.

As noted by the State, in order to prevail on a motion for substitution of judge for cause, the defendant bears the burden of showing actual prejudice, animosity, hostility, ill will or distrust directed toward the defendant. (*People v. Matlock* (1981), 97 Ill. App. 3d 842; *People v. Smith* (1980), 88 Ill. App. 3d 897.) The continuance of the matter for further report from the probation department suggests that the court's "wrath" was not directed toward the defendant, but was expressed against defendant's counsel personally. Further, the brief hiatus afforded by the continuance allowed a "cooling off" per-

iod, and enabled Mr. Stone to remove himself from actually physically representing the defendant. Only Ms. Alexander appeared on the defendant's behalf at the final sentencing hearing.

*People v. Chatman* (1967), 36 Ill. 2d 305, relied on by the defendant in support of his argument, is inapposite. In *Chatman*, the defendant's claim of incompetence was based upon the fact he was tried on a second rape indictment, without a jury, before the same judge who had tried and convicted him on the first indictment the preceding afternoon, and who had indicated at the conclusion of that first trial that he did not believe the defendant or the defendant's mother who had testified as an alibi witness. In determining that counsel's failure to seek a substitution transcended a mere tactical decision, the court considered it significant that there was a striking similarity between the two crimes which made it likely evidence of the first crime would be admissible in the second trial and, further, the record clearly showed the defendant felt the judge who had tried the first case was prejudiced against him.

To conclude that a judge is disqualified because of prejudice is not a judgment to be made lightly. (*People v. Vance* (1979), 76 Ill. 2d 171.) Such a judgment is all the more difficult in a case such as this where not only common sense, but a statute, directs that the judge who presided at the trial or who accepted the plea of guilty shall impose the sentence unless he is no longer sitting as a judge in that court. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—4—1(b).) The trial judge here was thoroughly knowledgeable about the underlying factual basis for the defendant's initial guilty plea, and with the terms of, and his breach of, his sentence of probation. Accordingly, the judge was exceedingly well qualified to render the most informed judgment possible. Moreover, the record provides no evidence the defendant felt the judge was prejudiced against him personally. In fact, the record shows the defendant wrote the judge a letter several days before the final sentencing hearing imploring him to give him a "second chance" at complying with the terms of a sentence of probation. In sum, we conclude counsel's performance was not deficient, and that the defendant was not deprived of the counsel guaranteed him by the sixth amendment.

■■ Defendant contends his counsel was ineffective for allowing the hearing on a second petition, this time to revoke his burglary probation, to proceed before the same judge who had 13 days earlier expressed outrage at having been lied to and misled into affording him 150 hours of credit against his burglary probation public service requirement.

Defendant points to a three-page letter in the record filed by de-

fense counsel Jed Stone in which he demanded an apology from the trial judge for what Mr. Stone termed an unfounded "attack" on him personally. Whether there was any response to the demand is unknown, but defendant's burglary probation was revoked a week later after a hearing in which three of the four counts in the petition were found to have been proved, and he received a seven-year sentence consecutive to the four-year theft sentence. Defendant argues there clearly was cause for substitution of judge, that counsel's failure to do so was deficient, and that he was "damaged to the extent that judgment was rendered by an individual who had prior disagreements with both counsel and the defendant."

We do not agree defense counsel was deficient for failing to seek a substitution of·judge for cause. It is clear from the record that the judge's alleged "attack" was a personal one on Mr. Stone, and that Mr. Stone never again appeared in court on the defendant's behalf. Defendant was represented by Ms. Alexander in all proceedings subsequent to the in-court chastisement. Moreover, despite the court's alleged prejudice against the defendant because he lied to the court, credit for his full-time employment was not denied him altogether. Rather, the court required the parties to reach an agreement as to the amount of hours with which he should be credited, and a credit for 40 hours was agreed upon.

Unlike *People v. Chatman* (1967), 36 Ill. 2d 305, relied on by the defendant, there was no similarity in the evidence to be proved at the second revocation hearing with that proved at the first revocation hearing. The first petition was based on the defendant's failure to comply with a condition of probation, and the second petition alleged the commission of four criminal offenses. Consequently, it cannot be said that the trial judge had any reason to have preconceived notions about the proof against the defendant as was the case in *Chatman.*

In *People v. Malone* (1976), 41 Ill. App. 3d 914, 917-18, it was the court's opinion that the revocation of probation proceedings is a part of the sentencing procedure, and the court retains jurisdiction for the purpose of sentencing a defendant who does not comply with the terms of his probation. Further, the only substitution of judge allowed from such a proceeding is for cause under section 114—5(c). (Ill. Rev. Stat. 1983, ch. 38, par. 114—5(c).) To be disqualifying, the alleged basis or prejudice of a trial judge must be shown to have stemmed from an extrajudicial source *and result in an opinion on the merits* on some bias other than what the judge learned from his participation in the case. (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 565, *cert. denied* (1981), 449 U.S. 1077, 66 L. Ed. 2d 799, 101 S. Ct. 855.) The

defendant fails to argue or point to any facts from which it could be concluded that the trial judge below had formed an opinion on the merits of the proceeding on any basis other than the evidence which was presented at the revocation hearing. That the judge conducted the hearing dispassionately and in an atmosphere of fairness and objectivity is borne out by the report of proceedings. (See *Payne v. Coates-Miller, Inc.* (1979), 68 Ill. App. 3d 601.) It also bears mention that the court found the State's proof lacking as to the fourth count, criminal damage to property. Finally, contrary to *Chatman*, as noted above, the record provides no indication that the defendant felt the judge here was prejudiced against him at the time of the revocation proceeding.

In *People v. Campbell* (1984), 129 Ill. App. 3d 819, the court noted that an accused unquestionably has a due process right to be tried before an unbiased judge, but that no case had been called to its attention that an accused had an absolute right to a substitution of judge without making a showing of actual prejudice. The court there considered that strategic matters involving " 'the superior ability of trained counsel' " are best left to that counsel, and that the question there of whether to seek a statutory peremptory right of substitution of judge was not beyond the realm of strategic or tactical decisions of counsel. The court concluded that although counsel should consider the desires of the accused, the ultimate decision should be left to the discretion of counsel. *People v. Campbell* (1984), 129 Ill. App. 3d 819, 821.

Based on the record and argument presented on appeal, we conclude the defendant has failed to show that counsel's performance in this regard was so deficient and so serious an error as to deprive him of the counsel guaranteed him by the sixth amendment, or that he was prejudiced in this right to a fair trial by counsel's performance. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2065.

Lastly, defendant contends his seven-year consecutive sentence was excessive in view of the nature of the offenses and the violations of probation which occurred. He also argues the excessiveness was compounded by the court's prejudice against him and counsel's failure to move for substitution. The record fails to support the defendant's claim of prejudice or ineffectiveness of counsel. Consequently, the integrity of the sentence imposed is not subject to challenge on those bases.

■ Defendant relies on *People v. Brogan* (1979), 76 Ill. App. 3d 957, in support of his argument that the maximum term which was imposed was excessive. *Brogan* is distinguishable.

When a defendant is admitted to probation and that probation is revoked, the trial court may sentence defendant to any sentence that would have been appropriate for the original offense. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—4(e).) Although the defendant cannot be sentenced for the crime which constituted the probation violation (*People v. Ford* (1972), 4 Ill. App. 3d 291, 293), the defendant's conduct while on probation may properly be considered by the trial court in assessing his rehabilitative potential. *People v. Hoga* (1982), 109 Ill. App. 3d 258, 264; *People v. Brogan* (1979), 76 Ill. App. 3d 957, 959.

Unlike the defendant in *Brogan*, who had no juvenile criminal record, the defendant here had a juvenile criminal record of violent offenses, armed robbery and aggravated battery. He apparently successfully completed a sentence of probation imposed for those offenses. The instant petition to revoke probation was filed less than two months after the defendant was first placed on probation for burglary. Unlike the minor offenses which were charged in *Brogan* (criminal trespass and disorderly conduct stemming from the defendant's climbing of a 130-foot tower on private property), the petition charged the defendant with one count of battery against a police officer, two counts of obstructing a peace officer, and one count of criminal damage to property. The first three counts were found proved at the revocation hearing. The charges arose out of an incident in which the defendant was engaged in a physical altercation with another man in the presence of a police officer, and occurred subsequent to his arrest and while he was in custody at the police department. In view of the defendant's history of violence, and the fact that he was undeterred from such conduct despite the presence of police officers and despite having received the full benefit of the juvenile court system, the court concluded that the defendant's character and attitude made him an "absolute certainty" to commit further crimes. Accordingly, the court imposed the maximum seven-year sentence.

Based on this record, we cannot conclude the sentence imposed was done so arbitrarily or capriciously, or that it is excessive. Accordingly, no reduction or reversal is possible. *People v. Cox* (1980), 82 Ill. 2d 268.

The judgment and sentences of the circuit court of Lake county in cases Nos. 84—667 and 84—719 are affirmed.

Affirmed.

REINHARD and SCHNAKE, JJ., concur.